## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

ADRIAN LOVATO, JOSHUA BEASLEY,
CALLUPP HENDERSON, DAN HOFFERT,
REUBEN STOKES, ARRISON PARRISH,
GABRIEL RAMIREZ, OSWALDO
ROBELDO-VALENCIA, ALOYSIUS SANCHEZ,
FIDEL SANCHEZ, SIMON GRIEGO,
THOMAS MCCUE, GILBERT SEDILLO,
and WILBERT SORTO,

       Plaintiffs,

v.                                 No.

JOE LYTLE, EMMITT BLAND, JESSE DIAZ,
DAVID VERRETT, HERRERA, JORDAN
BOJORQUEZ, YOUNG, LUKAS CHAVEZ,
MARTINEZ, and JOHN DOES 1-3,

       Defendants.

### COMPLAINT FOR THE RECOVERY OF DAMAGES
### CAUSED BY THE DEPRIVATION OF CIVIL RIGHTS

       Plaintiffs bring this complaint for damages caused by the violation of their civil and constitutional rights. Plaintiffs file this complaint under the federal Civil Rights Act, and the Constitution of the United States. In support of this Complaint, Plaintiffs allege the following:

### JURISDICTION AND VENUE

1. Jurisdiction over the subject matter of this action is conferred by 28 U.S.C. § 1331 and 42 U.S.C. §§ 1983 and 1988.

2. Venue is proper as the acts complained of occurred exclusively within Valencia County and Cibola County, New Mexico.

**PARTIES**

3.  All Plaintiffs are individuals and residents of New Mexico.

4.  At all material times, Plaintiffs were in the custody of the New Mexico Corrections Department (hereinafter "NMCD").

5.  The majority of the events described below occurred in Valencia County at Central New Mexico Correctional Facility (hereinafter "CNMCF" or "the prison").

6.  During all material times all Defendants were employed by NMCD.

7.  During all material times Defendant Joe Lytle was employed by the NMCD as an assistant Warden.

8.  During all material times Defendants Emmitt Bland and Jesse Diaz were employed as Captains.

9.  During all material times Defendant David Verrett was employed as a Lieutenant.

10. During all material times Defendants Herrera, Jordan Bojorquez, Young, Lukas Chavez, Martinez and John Does 1-3 were employed as Correctional Officers.[1]

11. All Defendants were acting under the color of state law and within the scope of their employment at all material times.

12. All defendants are sued in their individual capacities.


**FACTUAL BACKGROUND**

13. Following a disturbance at the Grants prison, several inmates were transported in two different trips to CNMCF in Los Lunas.

---

[1] The first names of Defendants Herrera, Young and Martinez are unknown at the time of filing this complaint.

14. On March 20, 2020, Plaintiffs Adrian Lovato, Joshua Beasley, Callupp Henderson, Dan Hoffert, Reuben Stokes, Arrison Parrish, Gabriel Ramirez, Oswaldo Robledo-Valencia, Aloysius Sanchez and Fidel Sanchez were transported to CNMCF.

15. On April 8, 2020, Plaintiffs Simon Griego, Thomas McCue, Gilbert Sedillo, and Wilbert Sorto were transported to CNMCF.

16. Prior to their departure from Grants, transport officers from CNMCF forced Plaintiffs to kneel on the concrete floor while they waited to be transported.

17. Eventually Plaintiffs were put onto transport vans.

18. One of the transport officers said, "We are going to tune you up real good."

19. In a deliberate show of force, an unusually large number of correctional officers were present when the transport vans arrived at Los Lunas.

20. As soon as Plaintiffs were taken off the vans they were subjected to abusive and sexually degrading language, including threats of physical violence.

21. On the arrival of each transport, multiple correctional officers attempted to provoke fights with the Plaintiffs.

22. Correctional officers told Plaintiffs as they got off the bus "this is your chance to fight us."

23. Certain prisoners were then subjected to deliberately abusive and intentionally punishing strip searches.

24. Plaintiffs were stripped naked and told to bend over and spread their butt cheeks.

25. Several Plaintiffs were instructed by Defendants and other correctional officers to bend over and spread their butt cheeks multiple times in succession.

26. Each Plaintiff was taunted with degrading sexual insults by Defendants and other correctional officers during the incidents described in this Complaint.

27. Each Plaintiff was terrorized with menacing threats of physical violence by Defendants and other correctional officers during the incidents described in this Complaint.

28. Defendants' behavior was an intentional provocation designed to sexually humiliate, intimidate and terrorize Plaintiffs.

29. Plaintiffs were told to put their heads down and not to look at individual officers.

30. Plaintiffs were told to spread their "ass-cheeks like good bitches."

31. Plaintiffs were told to be "good bitches" and to "bend over like good little girls" during the strip searches.

32. The threats of physical violence combined with sexualized bullying and intimidation were premeditated and occurred regardless of whether the Plaintiffs were complying with orders or objecting to their treatment.

33. After the strip search, certain prisoners were selected to have their heads forcibly and violently shaved.

34. Upon information and belief, the decision to forcibly shave certain prisoners was premeditated and taken by high- ranking NMCD staff members, including Defendants Lytle and Bland.

35. The decision to intimidate, sexually harass and forcibly and violently shave prisoners' heads was taken to deliberately punish Plaintiffs.

**Plaintiff Adrian Lovato**

36. Plaintiff Lovato is out of custody at the time of filing this Complaint.

37. Upon arrival in Los Lunas, Lovato saw numerous guards waiting for them.

38. Lovato was subjected to abusive language, violent pushing and shoving, and commands to look at the floor and not at staff.

39. Each time Lovato looked up he was hit, slapped, or kicked.

40. At one point a transport officer stuck the toe of his boot between Lovato's buttocks and said, "you like it like this don't you?"

41. Despite this, Lovato recognized Defendant Lytle who was standing with a cell phone in his hand.

42. Lytle seemed to be recording a video of the incident with his phone.

43. Lovato saw other prisoners who had just experienced a violent head shave.

44. Despite having almost no hair, Lovato was ordered onto his knees "like a good little bitch."

45. Lovato turned to look at John Doe 2.

46. Lovato only had a small ponytail and clearly did not need a haircut.

47. Defendant John Doe 2 grabbed Lovato's small ponytail and yanked it with such force Lovato screamed in pain and thought it had been ripped from his head.

48. Upon information and belief, Defendant John Doe 2 then grabbed clippers from Defendant John Doe 1, shaved Lovato's small ponytail, and returned the clippers to John Doe 1.

49. During this process, Lovato suffered a cut to the side of his head from the clippers that were just used on other prisoners.

50. While shaving Lovato's ponytail, John Doe 2 said, "if you look at me again, I'm going to kick you in the face."

51. Afterwards, Lovato asked John Doe 2 if his shaved head made him happy. John Doe 2 replied "no, but blood on the clippers do."

52. Lovato was intentionally intimidated and terrorized by Defendants during this incident.

53. Lovato endured pain, suffering and sexual humiliation as a result of Defendants' behavior.

**Plaintiff Joshua Beasley**

54. Beasley recognized Defendant Bland as one of the main aggressors on March 20, 2020.

55. Upon arrival, officers threatened Beasley by saying, "this is your chance to fight us."

56. Beasley was told to put his nose on the wall and instructed to look at the ground.

57. When Beasley tried to turn and look at the aggressors his head was slammed into the wall multiple times.

58. Beasley had long blond hair at the time.

59. Officers taunted and threatened Beasley by saying "look at this little ray of sunshine."

60. Defendant Bland yelled, "He needs a haircut."

61. At one point, a correctional officer took Beasley from the wall and dragged him backwards while his hands were cuffed behind his back.

62. In this position Beasley was bent at the waist while his cuffed hands were being yanked straight up into the air.

63. A correctional officer pulled on Beasley's handcuffs in a manner that forced Beasley's head to come into direct contact with his genital area.

64. This correctional officer yelled, "Are you trying to suck my dick, you faggot?"

65. Plaintiff Beasley was then forced onto his knees.

66. This same correctional officer forced Beasley's neck onto the rim of a trash can to violently shave his head.

67. This correctional officer pushed down hard on Plaintiff Beasley's neck so that he choked on the rim of the trash can.

68. As Beasley tried to lift his head off the rim of the trash can to allow air through his throat the officer yelled sexually degrading names at him calling him a "faggot" and a "gay bitch."

69. Beasley then had his head violently shaved by Defendant John Doe 1 as he was held down on his knees, choking over a trash can.

70. Afterwards, officers told Beasley, "You better not say anything to the nurse."

71. Beasley was intentionally intimidated and terrorized by Defendants during this incident.

72. Beasley endured pain, suffering and sexual humiliation as a result of Defendants' behavior.

**Plaintiff Callupp Henderson**

73. Plaintiff Henderson is an African American.

74. During his strip search a correctional officer said, "show me your ass boy."

75. The use of the term "boy" was a deliberately degrading act of racism.

76. Henderson was also subjected to a violent head shave.

77. As Henderson was forced onto his hands and knees Defendant Herrera, while standing directly behind his backside, yelled, "Is this your wife's favorite position?"

78. Herrera also said, "Yeah, like a good little bitch".

79. Henderson also heard an officer yell at Plaintiff Beasley, "Look at that ray of sunshine."

80. Henderson objected to having his head shaved because he is a Muslim.

81. Defendant John Doe 1 then forcefully and violently shaved Henderson's head while his face was inside the trash can.

82. The more Henderson tried to object to having his head shaved the more violent the abuse became.

83. Henderson was intentionally intimidated and terrorized by Defendants during this incident.

84. Henderson endured pain, suffering and sexual humiliation as a result of Defendants' behavior.

**Dan Hoffert**

85. Plaintiff Dan Hoffert was also subjected to a violent head shave.

86. While in the Grants facility, Hoffert was ordered to sit in an uncomfortable position for an extended period while his hands were handcuffed behind his back.

87. Hoffert was unable to remain in this painful position for such a long period of time.

88. Defendant Bojorquez and Defendant Young became angry with Hoffert for not remaining in the same position.

89. Defendant Bojorquez and Defendant Young picked up Hoffert by his elbows and walked him from the gym to the cafeteria.

90. Defendant Bojorquez and Defendant Young used Hoffert's head as a battering ram to open the door.

91. This caused Hoffert to suffer severe pain and an injury to his head.

92. As Hoffert was being restrained for transport to CNMCF, he requested to use the restroom.

93. Defendant Young leaned down and said to Hoffert: "You are a disgrace to your race. You shouldn't call yourself a white boy."

94. Defendant Bojorquez and Defendant Young then picked Hoffert up by the elbows and rammed his head into a duffle bag which contained metal transport harnesses.

95. This violent act caused a second blow to Hoffert's head.

96. Defendant Bojorquez and Defendant Young were deliberately using violence and provocative language to provoke and intimidate Hoffert.

97. Defendant Bojorquez and Defendant Young, along with other officers, transported the prisoners to CNMCF.

98. When they arrived at the prison, Hoffert was the last inmate off the transport van.

99. As Hoffert got off the van one of the officers said "watch out for this one; he has a mouth on him."

100. In response, an officer pushed Hoffert's face into a cage cell causing his nose to bleed.

101. Hoffert was then subjected to a sexually degrading strip search.

102. During the strip search Hoffert was told to "spread ass cheeks like a good little bitch."

103. After the strip search Hoffert was taken to a trash can where he was violently and forcibly shaved by Defendant John Doe 1.

104. Defendant Bojorquez and Defendant Young stood on either side and pushed Hoffert's throat into the rim of the trash can while he was being shaved.

105. Hoffert began to choke as a result.

106. The clippers used to shave Hoffert's head jammed and pulled hair from his head, causing his scalp to bleed.

107. Afterwards, Defendant Young told Hoffert, "If you tell the health care lady there are any injuries, there will be consequences."

108. Hoffert was intentionally intimidated and terrorized by Defendants during this incident.

109. Hoffert endured pain, suffering and sexual humiliation as a result of Defendants' behavior.

**Plaintiff Reuben Stokes**

110. Plaintiff Stokes was also subjected to a violent head shave.

111. Upon arrival at CNMCF, Stokes was put through an x-ray scanner.

112. Stokes was then subjected to a sexually degrading strip search.

113. During the strip search Stokes was told to "bend over like a good little bitch" and was commanded to spread his butt cheeks three separate times.

114. After the strip search Stokes was taken to a trash can where he was violently and forcibly shaved by Defendant John Doe 1, despite having hair only one inch in length.

115. While cuffed with his hands behind his back, Stokes was pushed onto his knees and had his neck forced down so hard on the rim of the trash can that he began to choke.

116. During the forcible shaving, Defendant John Doe 1 cut Stokes' ear, causing it to bleed.

117. Officers taunted Stokes by saying, "watch out, the warden is behind you" in reference to Defendant Lytle.

118. Each time Stokes looked up he was slammed onto the ground.

119. Despite this, Stokes recognized Defendant Lytle who was standing with a cell phone in his hand.

120. Stokes was intentionally intimidated and terrorized by Defendants during this incident.

121. Stokes endured pain, suffering and sexual humiliation as a result of Defendants' behavior.

**Plaintiff Arrison Parrish**

122. Parrish, a Native American, complained that he had been strip searched in Grants and asked why he was being forcibly strip searched again

123. Defendants responded, "shut up you bitch" and "keep your eyes on the ground you little bitch."

124. As part of his Native American tradition and religion, Parrish had previously cut his hair over a year prior, to mourn the death of his brother.

125. To pay his respects upon his upcoming release, Parrish started to grow his hair back.

126. For fourteen months, Parrish had no haircuts in order to grow out his hair.

127. On March 20, 2020, Parrish's hair was six inches long.

128. Parrish was told to "get on your knees like a good little bitch."

129. Parrish was forced into a "doggy style" position with his head over the trash can.

130. Parrish told Defendants that he was Native American and had the right to grow out his hair.

131. In response, Parrish heard a correctional officer say, "This is our version of scalping you."

132. With his neck pressed into the rim of the trash can Defendant John Doe 1 violently and forcibly shaved Parrish's head.

133. Parrish was intentionally intimidated and terrorized by Defendants during this incident.

134. Parrish endured pain, suffering and sexual humiliation as a result of Defendants' behavior.

**Plaintiff Gabriel Ramirez**

135. Plaintiff Ramirez is out of custody at the time of filing this complaint.

136. Ramirez was a barber in the Grants facility.

137. When the custody officers started to push and verbally abuse him, Ramirez recognized Joe Lytle as an assistant warden in the facility.

138. Ramirez was called a "little bitch" and was told, as he spread his butt cheeks during the strip search: "This is how you like it. This is how you like to get fucked."

139. After the strip search Ramirez was also forcibly shaved by Defendant John Doe 1.

140. Ramirez knew the unsanitary way each person was having his head shaved was dangerous.

141. Due to the violent, forcible nature of the head shaving process, people were getting cuts on their scalps.

142. No attempt was made to sterilize equipment between each shave.

143. From his training as a barber, Ramirez was particularly aware that this presented an enormous risk of Hepatitis C and other blood-borne illnesses.

144. Ramirez was intentionally intimidated and terrorized by Defendants during this incident.

145. Plaintiff Ramirez endured pain, suffering and sexual humiliation as a result of Defendants' behavior.

**Plaintiff Oswaldo Robeldo-Valencia**

146. Robledo-Valencia was also subjected to a violent head shave.

147. When Robledo-Valencia saw he was going to have his head shaved in a trash can, he started to resist.

148. According to an incident report, Defendant Captain Jesse Diaz and Defendant Lukas Chavez had to "physically place this inmate on his knees and hold him" while his head was shaved.

149. Defendants Diaz and Chavez told Robledo-Valencia to "get on your knees you motherfucker…you like it like that."

150. Defendants Diaz and Chavez violently pushed his head into the trash can.

151. Defendants Captain Diaz and Chavez pushed Robledo-Valencia's neck down so hard on the rim of the trash can that he started choking.

152. Defendant John Doe 1 forcibly shaved Robledo-Valencia's head.

153. Defendant John Doe 1 was so rough while shaving Robledo-Valencia's head that he sustained multiple bloody wounds on his scalp.

154. Robledo-Valencia was intentionally intimidated and terrorized by Defendants during this incident.

155. Robledo-Valencia endured pain, suffering and sexual humiliation as a result of Defendants' behavior.

**Plaintiff Aloysius Sanchez**

156. Plaintiff Sanchez is out of custody at the time of filing this complaint.

157. Sanchez was brought to CNMCF on March 20, 2020.

158. At CNMCF, Sanchez was also subjected to a violent head shave.

159. While at Grants, Sanchez was ordered to kneel on the floor for an extended period while his hands were handcuffed behind his back.

160. Sanchez was told, "If you speak, we will mace your face."

161. Sanchez was then placed in a van for transport.

162. Upon arrival at CNMCF, Sanchez was pushed past the guards conducting strip searches.

163. While the guards conducted the strip searches, Sanchez heard them yelling sexually degrading and threatening insults at the other inmates.

164. After seeing his fellow inmates bent over and naked, Sanchez was taken to a trash can.

165. While shackled, Sanchez's neck was forced onto the rim of the trash can and he was pushed down onto his hands and knees.

166. Sanchez was told "you like taking it, little bitch" while his head was forcibly shaved by Defendant John Doe 1.

167. Sanchez was intentionally intimidated and terrorized by Defendants during this incident.

168. Sanchez endured pain, suffering and sexual humiliation as a result of Defendants' behavior.

**Plaintiff Fidel Sanchez**

169. Plaintiff Sanchez is out of custody at the time of filing this complaint.

170. Sanchez was brought to CNMCF on March 20, 2020.

171. Upon arrival, Sanchez was hungry and asked for a sack lunch.

172. In response, officers grabbed Sanchez and slammed his face against the wall and told him to "shut the fuck up, little bitch."

173. Sanchez heard an officer say, "I fuck little faggots like him on the daily, let's give this little bitch a haircut."

174. While shackled, Sanchez was then slammed down on his knees and his neck was forced onto the rim of the trash can.

175. They forced Sanchez's neck down so hard on the rim that he began to choke.

176. Sanchez then had his head violently shaved by Defendant John Doe 1.

177. Afterwards, officers told Sanchez "we will fuck you up if you tell the nurse anything stupid."

178. Sanchez feared for his life and stayed silent.

179. Sanchez endured pain, suffering and sexual humiliation as a result of Defendants' behavior.

**Plaintiff Simon Griego**

180. Plaintiff Griego is out of custody at the time of filing this complaint.

181. Griego was brought to Los Lunas on April 8, 2020.

182. Upon arrival, Defendant Martinez pointed Griego out, and as a result Griego was taken by the neck and had his head slammed into the fence, injuring his eye.

183. Staff kept asking Griego what his NMCD number was.

184. Griego kept telling them his correct NMCD number, but in response they threw him against the fence.

185. Defendant Lieutenant Verrett yelled: "You have an attitude, this ain't Grants…you think you're tough now?"

186. Defendant Lieutenant Verrett told Griego "this is about respect."

187. During the strip search Griego was sexually humiliated.

188. Griego was repeatedly forced by correction officers to bend over and spread his butt cheeks.

189. After the strip search Griego was taken to the trash can.

190. When he tried to look up, custody officers yelled "don't move your head up, I'm gonna smoke you."

191. Griego's neck was forced onto the rim of the trash can while the top of his head was forcibly shaved by Defendant John Doe 3.

192. They forced Griego's neck down so hard on the rim that he began to choke.

193. Griego's scalp was cut and his jumpsuit torn during the abuse.

194. Griego was intentionally intimidated and terrorized by Defendants during this incident.

195. Griego endured pain, suffering and sexual humiliation as a result of Defendants' behavior, including an injured eye.

**Plaintiff Thomas McCue**

196. Plaintiff McCue was subjected to a violent head shave.

197. McCue was in segregation during the disturbance at the Grants prison.

198. McCue was brought to CNMCF on April 8, 2020.

199. McCue was subjected to abusive language and witnessed violent pushing and shoving.

200. McCue recognized Defendant Lytle with a cell phone in his hand.

201. Lytle seemed to be recording a video with his phone.

202. McCue told officers: "I'm getting stressed out. I have seizures."

203. In response McCue was told, "You can see medical when we want you to."

204. McCue was put through an x-ray scanner, then subjected to a sexually degrading strip search.

205. During the strip search McCue was commanded to bend over and spread his butt cheeks three separate times while Defendants called him a "good little bitch."

206. Upon information and belief, McCue was the third inmate to have his head forcibly shaved that day.

207. While handcuffed behind his back, McCue's legs were kicked from under him and his neck was pushed onto the rim of a trash can.

208. McCue saw guards shaving inmates' heads without sanitizing the clippers.

209. Defendant John Doe 3 shaved McCue's head so fast he still had clumps of hair on the back of his head.

210. While shaving his head, several corrections officers screamed: "Don't look at us. We will fuck you up."

211. McCue believed he was going to be raped.

212. McCue was intentionally intimidated and terrorized by Defendants during this incident.

213. McCue endured pain, suffering and sexual humiliation as a result of Defendants' behavior.

**Plaintiff Gilbert Sedillo**

214. Plaintiff Sedillo is out of custody at the time of filing this complaint.

215. Sedillo was in the medical department when the disturbance broke out in the Grants facility and was not present during the incident.

216. Sedillo was brought to CNMCF on the April 8 transport.

217. Upon arrival at the prison, Sedillo saw several officers standing with what appeared to be pepper ball guns.

218. Sedillo was violently pushed against the fence while guards yelled, "Don't look at us".

219. Sedillo watched as guards physically attacked Plaintiff Simon Griego when they pretended to not hear him repeat his NMCD number.

220. Sedillo also saw a fellow prisoner return from the trash can used for shaving heads with his head shaved and bleeding.

221. Sedillo was subjected to a sexually humiliating strip search where he was called "a fucking faggot" and "little bitch."

222. Sedillo had previously worked at the booking intake for Los Lunas and knew the Defendants and other correctional officers were not following proper intake procedures.

223. Sedillo was subjected to a forcible head shave with his head over a trash can by John Doe 3.

224. Sedillo was intentionally intimidated and terrorized by Defendants during this incident.

225. Sedillo endured pain, suffering and sexual humiliation as a result of Defendants' behavior.

**Plaintiff Wilbert Sorto**

226. Plaintiff Sorto is out of custody at the time of filing this complaint.

227. Sorto was also on the April 8 transport.

228. On arrival Sorto was pushed up against the fence and had his face smashed into the wire.

229. Sorto was also subjected to a sexually humiliating strip search.

230. Sorto was then taken to the trash can and had his head shaved against his will.

231. Sorto was intentionally intimidated and terrorized by Defendants during this incident.

232. Sorto endured pain, suffering and sexual humiliation as a result of Defendants' behavior.

## COUNT I: VIOLATION OF THE EIGHTH AMENDMENT
### (All Defendants)

233. Plaintiffs restate each of the preceding allegations as if fully stated herein.

234. Plaintiffs have an Eighth Amendment right to be free from cruel and unusual punishment.

235. All Defendants deliberately took part in an abusive "welcome committee" for Plaintiffs at CNMCF.

236. Upon arrival at CNMCF, several Plaintiffs suffered excessive, sexually humiliating and threatening strip searches as described in detail above.

237. During these strips searches, several Plaintiffs were repeatedly forced to bend over at the waist while corrections officers made sexually degrading and threatening comments.

238. Defendants Lytle and Bland oversaw and approved of these strip searches.

239. Defendants Diaz, Bojorquez, Young, Chavez, John Does 1-3 and other corrections officers maliciously used unnecessary and excessive acts of force to cause harm to Plaintiffs as described in detail above.

240. Defendants Lytle and Bland oversaw and approved of the excessive use of force maliciously inflicted on Plaintiffs by Defendants Diaz, Bojorquez, Young, Chavez, John Does 1-3 and other corrections officers.

241. Defendants Diaz, Herrera, Chavez and other corrections officers deliberately used sexually abusive, threatening, degrading language designed to humiliate and terrorize Plaintiffs as described in detail above.

242. Defendants Lytle and Bland oversaw and approved of the sexually abusive, threatening, degrading language used by Defendants Diaz, Herrera, Chavez and other corrections officers to humiliate and terrorize Plaintiffs.

243. Defendants Diaz, Verrett, Young, Chavez, John Doe 2 and other corrections officers deliberately used violent threats to terrorize Plaintiffs as described in detail above.

244. Defendants Lytle and Bland oversaw and approved of the violent threats used by Defendants Diaz, Herrera, Chavez and other corrections officers to terrorize Plaintiffs.

245. Defendant Young and other corrections officers used racist language to increase the level of terror experienced by some Plaintiffs.

246. Defendants Lytle and Bland oversaw and approved of the racist language used by Defendant Young and other corrections officers to terrorize some Plaintiffs.

247. All Defendants actively participated in the physical abuse, sexual humiliation and terrorizing of Plaintiffs.

248. Every corrections officer who was present, including all Defendants, watched and failed to intervene in the physical abuse, sexual humiliation and terrorizing of Plaintiffs.

249. The use of sexually humiliating strip searches coupled with the forcible shaving of Plaintiffs' heads while on their hands and knees with their heads in a trash can was designed to sexually humiliate, intimidate and terrify Plaintiffs.

250. The violent head shavings conducted by John Does 1-3 and overseen by Defendants Lytle and Bland were performed in a manner designed to inflict pain and to terrify Plaintiffs.

251. Several Plaintiffs received bloody gashes in their scalps during the violent head shavings performed by John Does 1-3.

252. John Does 1-3 didn't even bother to clean the blood off the clippers between Plaintiffs' violent head shavings.

253. Defendants Lytle and Bland deliberately refused to intervene during these bloody, violent head shavings.

254. All Defendants are aware that a large number of prisoners have Hepatitis C and other bloodborne infectious diseases.

255. All Defendants knew that the unsanitary head shavings were dangerous to the health of each of the Plaintiffs.

256. Despite this knowledge John Does 1-3 actively participated in this abusive behavior.

257. Despite this knowledge every Defendant failed to intervene to stop this abusive behavior.

258. Defendant Lytle, a high-ranking member of staff, actually organized and encouraged the abuse of Plaintiffs.

259. Several Plaintiffs noted that Defendant Lytle was apparently in charge of the abuse.

260. Several Plaintiffs also noticed Defendant Lytle using his cell phone to record the events.

261. Defendant Bland, a high-ranking member of staff, actively participated and ensured Defendant Lytle's orders were followed.

262. Defendant Lytle and Bland were present during the infamous "nuts to butts" lawsuit filed against the same facility in 2011.

263. The "nuts to butts" lawsuit contained similar allegations of sexual and physical abuse as the instant case.

264. As such, defendants Lytle and Bland knew that their conduct violated the constitution.

265. No legitimate penological interest exists in forcing inmates to repetitively bend over during a strip search.

266. No legitimate penological interest exists in using sexually humiliating and threatening language while strip searching prisoners.

267. No legitimate penological interest exists in using violent threats to inmates when the inmates are not presenting an active security threat.

268. No legitimate penological interest exists in forcing inmates to have their heads violently shaved while on all fours, with their faces pushed down into a trash can.

269. No legitimate penological interest exists in hurling racist insults at inmates.

270. The actions of all Defendants described above violate contemporary standards of decency.

271. The actions of all Defendants were maliciously and intentionally designed to inflict harm on Plaintiffs.

272. As a result of all Defendants actions, Plaintiffs suffered abusive language, acts of physical violence and intimidation, sexually humiliating strip searches and degrading forcible head shaves.

273. The forcible shaving of a person's head while pushed into a trash can amounts to a battery in violation of criminal statute § 30-3-4.

274. Such deliberately outrageous conduct violates the Eighth Amendment.

275. As a result of Defendants' malicious, cruel actions, all Plaintiffs suffered physical and psychological injuries including pain and suffering, sexual humiliation and emotional distress in violation of their constitutional rights.

## COUNT II: VIOLATION OF PROCEDURAL DUE PROCESS
### (Defendant Lytle)

276. Plaintiffs restate each of the preceding allegations as if fully stated herein.

277. When prisoners are being punished for behavior within a prison system, they have a Fourteenth Amendment right to procedural due process.

278. The conduct described above is clearly punishment that was inflicted in addition to the punishment Plaintiffs endured simply by being incarcerated.

279. The conduct described above is clearly punishment that is atypical in any prison.

280. Defendant Lytle had an obligation to provide procedural due process to Plaintiffs prior to them being singled out for punishment in the extreme and malicious manner described above.

281. Defendant Lytle oversaw and approved of this atypical, malicious punishment of all Plaintiffs.

282. Defendant Lytle knew of his responsibility to provide due process to prisoners prior to inflicting any punishment on them.

283. Defendant Lytle deliberately ignored his obligation to provide due process to Plaintiffs.

284. As a result, no procedural due process was provided to Plaintiffs for their punishment.

285. As a result, all Plaintiffs were unable to challenge the punishment they received from their "welcome committee."

286. Furthermore, given the malicious, extreme nature of the punishment inflicted on Plaintiffs at Defendant Lytle's direction, there is no imaginable procedure that could ever be provided to Plaintiffs to justify the actions of Defendants and other corrections officers that are described in detail above.

287. As a result, all Plaintiffs were subjected to unnecessary and unjustified pain and suffering in violation of their constitutional rights.

## JURY DEMAND

Plaintiffs hereby demands a trial by jury on all counts so triable.

WHEREFORE, Plaintiff requests judgment as follows:

1.  Compensatory damages in an as yet undetermined amount, jointly and severally against all Defendants, including damages for attorney's fees and emotional harm.

2.  Punitive damages in an as yet undetermined amount severally against the individually named Defendants.

3.  Reasonable costs and attorney's fees incurred in bringing this action.

4.  Such other and further relief as the Court deems just and proper.


Respectfully submitted,

COYTE LAW P.C.

*/s/ Matthew E. Coyte*
Matthew E. Coyte
*Attorney for Plaintiff*
3800 Osuna Road NE, Suite 2
Albuquerque, NM 87109
(505) 244-3030
mcoyte@me.com


NEW MEXICO PRISON AND JAIL PROJECT

*/s/ Steven Robert Allen*
Steven Robert Allen
*Attorney for Plaintiff*
3800 Osuna Road NE, Suite 2
Albuquerque, NM 87109
(505) 515-0939
steve@nmpjp.org