## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

ADRIAN LOVATO, JOSHUA BEASLEY,
CALLUPP HENDERSON, DAN
HOFFERT, REUBEN STOKES, ARRISON
PARRISH, GABRIEL RAMIREZ,
OSWALDO ROBELDO-VALENCIA,
ALOYSIUS SANCHEZ, FIDEL
SANCHEZ, SIMON GRIEGO, THOMAS
MCCUE, GILBERT SEDILLO, WILBERT
SORTO, and VITO GURULE,

     Plaintiffs,

v.                                          No. 1:22-cv-00255-MIS-LF

JOE LYTLE, EMMITT BLAND, JESSE
DIAZ, JORDAN BOJORQUEZ, LUKAS
CHAVEZ, LANTOSH YOUNG, ABEL
GONZALES, JOHN DOE 1-2, ALFONSO
PADILLA, MARVIN GARCIA, IVAN
HOLGUIN, ROBERT CHAVEZ, and
MICHAEL CHAVEZ,

     Defendants.

### ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' THIRD MOTION FOR JUDGMENT ON THE PLEADINGS BASED ON QUALIFIED IMMUNITY

**THIS MATTER** is before the Court on the Third Motion for Judgment on the Pleadings

Based on Qualified Immunity, filed October 18, 2023, by Defendants Joe Lytle, Emmitt Bland,

Jesse Diaz, Jordan Bojorquez, Lukas Chavez, Lantosh Young, Abel Gonzales, Alfonso Padilla,

Marvin Garcia, Ivan Holguin, Robert Chavez, and Michael Chavez (collectively "Defendants").[1]

ECF No. 111. Plaintiffs Adrian Lovato, Joshua Beasley, Callupp Henderson, Dan Hoffert,

---

[1]     The Third Amended Complaint also names two unidentified Defendants, John Doe 1 and John Doe 2. *See* ECF No. 67. The Court does not address them at this time. *See Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996) (a party is properly before the court when a pleading is sufficiently clear to put defendant on notice).

Reuben Stokes, Arrison Parrish, Gabriel Ramirez, Oswaldo Robeldo-Valencia, Aloysius Sanchez, Fidel Sanchez, Simon Griego, Thomas McCue, Gilbert Sedillo, Wilbert Sorto, and Vito Gurule (collectively "Plaintiffs") responded, ECF No. 112, and Defendant replied, ECF No. 113. The Court heard arguments on the Motion on April 19, 2024. Upon due consideration of the parties' submissions and the relevant law the Court will **GRANT** in part and **DENY** in part the Motion.

## I.    FACTUAL BACKGROUND[2]

On March 20, 2020, following a "disturbance" at Western New Mexico Correctional Facility ("WNMCF") in Grants, New Mexico, Plaintiffs Adrian Lovato, Joshua Beasley, Callupp Henderson, Dan Hoffert, Reuben Stokes, Arrison Parrish, Gabriel Ramirez, Oswaldo Robeldo-Valencia, Aloysius Sanchez, Fidel Sanchez, and Vito Gurule were transferred to Central New Mexico Correctional Facility ("CNMCF") in Los Lunas, New Mexico. Third Am. Compl. (ECF No. 67) ¶¶ 12-13.[3] On April 8, 2020, Plaintiffs Simon Griego, Thomas McCue, Gilbert Sedillo, and Wilbert Sorto were also transferred to CNMCF. *Id.* ¶ 14. At the time, all Plaintiffs were inmates in the custody of New Mexico Corrections Department ("NMCD"); Defendant Joe Lytle was an Assistant Warden employed by NMCD; Defendants Emmitt Bland and Jesse Diaz were Captains employed by NMCD; and Defendants Jordan Bojorquez, Lantosh Young, Lukas Chavez, Abel Gonzales, Alfonso Padilla, Marvin Garcia, Ivan Holguin, Michael Chavez, and

---

[2]    The Court accepts the truth of all well-pleaded factual allegations in Plaintiffs' Third Amended Complaint and draws all reasonable inferences in Plaintiffs' favor for the purposes of this Motion.

[3]    In their Motion, Defendants raise matters outside of the pleading—referring to disputed facts outside of the Complaint, providing justification for behavior, and attaching reports as exhibits. *See* ECF No. 111 at 1-2, 19; ECF No. 43-1; ECF No. 43-2; ECF No. 43-3. The Court does not consider matters outside of Plaintiffs' Third Amended Complaint in reaching its decision.

Robert Chavez were Correctional Officers employed by NMCD. *Id.* ¶¶ 4-9. All allegations arise from these two instances of prisoner transfer. *See id.*

While waiting for transportation, unnamed officers forced Plaintiffs to kneel on concrete flooring. *Id.* ¶¶ 15-16. Throughout the transfer process, unnamed officers used provocative and "abusive and sexually degrading language." *Id.* ¶¶ 17-21, 25-30, 41, 43, 57. Plaintiffs underwent strip searches and had their heads "forcefully" shaved. *Id.* ¶¶ 22-24, 36-37, 43, 46-48, 50-53, 65-72, 77-86, 89, 105-11, 115-21, 128-38, 155-63, 181-89, 197-202, 212-19, 223-39, 250-53, 258-60. During the March 20 transfer, some Plaintiffs were naked while forced to bend over trash cans to have their heads shaved. *See id.* ¶¶ 168-76. The shaving caused cuts and bleeding in some instances, the same equipment was used repeatedly, and no sterilization occurred between use. *Id.* ¶¶ 147-51, 235.

Each Plaintiff's allegations are summarized as follows:

**A.     Adrian Lovato**

Plaintiff Lovato alleges that during the March 20 intake at CNMCF Defendants subjected him to abusive language, pushing and shoving, cut him during a head shave, and during the strip search one officer put a boot between his butt cheeks. *Id.* ¶¶ 41-53.

**B.     Joshua Beasley**

Plaintiff Beasley alleges that during the March 20 intake process guards told him to put his nose on the wall and when he looked away his head was "slammed" into the wall. *Id.* ¶¶ 58-59. Then, guards "dragged him backwards while his hands were cuffed behind his back." *Id.* ¶ 63. Plaintiff Beasley alleges a sexually humiliating strip search where a guard placed his head near his pants and used derogatory language, *id.* ¶¶ 64-65, and that he had his head shaved while forced on his knees and choked on a trashcan, *id.* ¶¶ 57-71.

### C.      Callupp Henderson

Plaintiff Henderson alleges that during the March 20 intake Defendants strip searched him while using racial and sexually humiliating language and then shaved his head over objections on religious grounds. *Id.* ¶¶ 76-83.

### D.      Dan Hoffert

On March 20, 2024, at WNMCF prior to transfer to and intake at CNMCF, Plaintiff Hoffert alleges that he was forced to sit in an uncomfortable position with his hands cuffed behind his back, and when he moved from the position Defendants Bojorquez and Young picked him up by the elbows and used his "head as a battering ram to open the [cafeteria] door" causing "severe pain and injury." *Id.* ¶¶ 90-99. At another point, Plaintiff asked to use the restroom and the same two Defendants "rammed" his head in a "duffle bag which contained metal transport harnesses." *Id.* ¶¶ 96-98. Additionally, during his intake at CNMCF, unnamed Defendants pushed Plaintiff's "face into a cage cell causing a nosebleed" and during a strip search told Hoffert "to spread ass cheeks like a good little bitch." *Id.* ¶¶ 104-06. Defendants then held Plaintiff over a trash can so forcefully that his throat pushed into the rim and shaved his head so roughly that the clippers jammed and caused bleeding. *Id.* ¶¶ 107-10.

### E.      Reuben Stokes

During the March 20 intake, Plaintiff Stokes alleges that Defendants subjected him to a "sexually degrading strip search" because a guard told him to "bend over like a good little bitch" and ordered him to spread his butt cheeks several times. *Id.* ¶¶ 117-18. Then, similar to other Plaintiffs, his head was shaved while being forced to bend over a trash can. *Id.* ¶ 119. He alleges that he "began to choke" and his ear was cut during the shaving. *Id.* ¶¶ 120-21. During the

shaving, Plaintiff Stokes alleges that Defendants taunted him to look up and then "slammed [him] on the ground" when he did. *Id.* ¶¶ 122-23.

### F.   Arrison Parrish

Plaintiff Parrish alleges that during the March 20 intake Defendants strip searched him while using sexually humiliating language and then forced him on his knees and bent him over a trashcan to shave his head over objections related to his Native American heritage. *Id.* ¶¶ 128-38.

### G.   Gabriel Ramirez

Plaintiff Ramirez alleges that during the March 20 intake, Defendants "started to push and verbally abuse him" and then "forcibly shaved" him. *Id.* ¶¶ 143-45.

### H.   Oswaldo Robeldo-Valencia

As part of the March 20 intake, Plaintiff Robeldo-Valencia alleges that when he "saw he was going to have his head shaved in a trash can, he started to resist[,]" *id.* ¶ 156, causing Defendants to "physically place [him] on his knees and hold him[,]" *id.* ¶ 157. As alleged, Defendants "pushed [his] neck down so hard on the rim of the trash can that he started choking." *Id.* ¶ 160. Plaintiff also alleges he "sustained multiple bloody wounds on his scalp" from having his head shaved. *Id.* ¶ 162.

### I.   Aloysius Sanchez

Plaintiff A. Sanchez alleges that while at WNMCF, prior to the March 20 transfer, Defendants "ordered [him] to kneel on the floor for an extended period while his hands were handcuffed behind his back" and used threatening language. *Id.* ¶¶ 169-70. Upon intake at CNMCF, Defendants shaved his head while he was shackled and his "neck was forced onto the rim of the trash can and he was pushed down onto his hands and knees" while a Defendant shouted "you like taking it, little bitch[.]" *Id.* ¶¶ 172-76.

**J.    Fidel Sanchez**

During the March 20 intake, Plaintiff F. Sanchez alleges that "officers grabbed Sanchez and slammed his face against the wall and told him to 'shut the fuck up, little bitch'" in response to asking for food. *Id.* ¶¶ 181-82. Plaintiff also alleges an officer said, "I fuck little faggots like him on the daily, let's give this little bitch a haircut." *Id.* ¶ 183. While he remained shackled, Plaintiff "was then slammed down on his knees and his neck was forced onto the rim of the trash can" where he "began to choke" as he had his head shaved. *Id.* ¶¶ 184-86.

**K.    Vito Gurule**

As part of his intake on March 20, Plaintiff Gurule "was subjected to abusive language, violent pushing and shoving, and commands to keep his eyes on the floor and not look at staff." *Id.* ¶ 195. And when Plaintiff "looked up he was slammed or hit by corrections officers." *Id.* ¶ 196. Plaintiff was then "subjected to a sexually degrading strip search" that involved sexually harassing language and he was ordered to "spread his butt cheeks." *Id.* ¶¶ 197-200. Similar to other Plaintiffs, Plaintiff Gurule then had his head shaved over a trash can. *Id.* ¶¶ 201-02.

**L.    Simon Griego**

Upon arrival at the April 8 intake, Plaintiff Griego alleges that "staff kept asking [him] what his NMCD number was" and "[w]hen staff did not get an acceptable answer [he] was taken by the neck and had his head slammed into the fence, injuring his eye." *Id.* ¶¶ 210-11. Plaintiff also underwent a "sexually humiliat[ing]" strip search where he was "repeatedly forced by correction officers to bend over and spread his butt cheeks[,]" *id.* ¶¶ 212-13, followed by a "forcible shaving" that cut his scalp and caused him to choke on a trash can, *id.* ¶¶ 214-19.

### M.   Thomas McCue

At the April 8 intake, Plaintiff McCue was "subjected to abusive language[,]" and when he said "I'm getting stressed out. I have seizures[,]" he was told "you can see medical when we want you to." *Id.* ¶¶ 226-30. He was then "subjected to a sexually degrading strip search" where he was "commanded to bend over and spread his butt cheeks three separate times while Defendants called him a 'good little bitch.'" *Id.* ¶¶ 231-32. Plaintiff's "legs were kicked from under him and his neck was pushed onto the rim of a trash can" when Defendants quickly shaved his head. *Id.* ¶¶ 234-36.

### N.   Gilbert Sedillo

During the April 8 intake, Plaintiff Sedillo alleges that he "was subjected to a sexually humiliating strip search where he was called 'a fucking faggot' and 'little bitch'[,]" and then had his head shaved over a trash can. *Id.* ¶¶ 250, 252.

### O.   Wilbert Sorto

As part of the April 8 intake, Plaintiff Sorto alleges that Defendants "pushed [him] up against the fence and had his face smashed into the wire[,]" and "subjected [him] to a sexually humiliating strip search" before shaving his head over a trash can. *Id.* ¶¶ 257-60.

Plaintiffs were instructed to look at the floor and to not look at the staff during these events, making identification of officers difficult. *Id.* ¶¶ 28, 42, 52, 58-59, 123, 195, 238, 247. Defendant Lytle was present, condoned the officers' actions, and recorded some of the intake incidents. *Id.* ¶¶ 44, 124, 222, 227-28, 240. Plaintiffs allege that Defendants "intentionally intimidated and terrorized" them and caused them to "endure[] pain, suffering, and sexual humiliation[.]" *Id.* ¶¶ 54-55, 73-74, 87-88, 112-13, 126-27, 139-40, 153-54, 164-65, 177-78, 191, 205-06, 220-21, 239-42, 254-55, 261-62. Unnamed officers prevented Plaintiff Gurule from

filing a grievance. *Id.* ¶¶ 203-04. Plaintiffs were discouraged from seeking medical treatment or reporting the incident to medical personnel. *Id.* ¶¶ 72, 111, 187, 229-30.

On March 28, 2023, Plaintiffs filed suit under the federal Civil Rights Act, 28 U.S.C. § 1331 and 42 U.S.C. §§ 1983 and 1988, against Defendants in their individual capacities as employees of NMCD. *Id.* ¶¶ 1-11. The operative Third Amended Complaint alleges violations of Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment, as well as a violation of the right to Procedural Due Process under the Fourteenth Amendment by Defendant Lytle. *Id.* ¶¶ 263-323. Defendants filed the instant Third Motion for Judgment on the Pleadings Based on Qualified Immunity on October 18, 2023. ECF No. 111. Plaintiffs filed a response on October 30, 2023, ECF No. 112, and Defendants filed a reply on November 13, 2023, ECF No. 113.

## II.    LEGAL STANDARDS

### A.    Rule 12(c)

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "A motion for judgment on the pleadings under Rule 12(c) is treated as a motion to dismiss under Rule 12(b)(6)." Atl. Richfield Co. v. Farm Cred. Bank of Wichita, 226 F.3d 1138, 1160 (10th Cir. 2000) (citing Mock v. T.G. & Y. Stores Co., 971 F.2d 522, 528 (10th Cir. 1992)).

To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Similarly, on a motion for judgment on the pleadings, the Court takes all well-pleaded facts as true and draws all reasonable inferences in the light most favorable to the non-moving party. *Doe v.*

*Woodward*, 912 F.3d 1278, 1285 (10th Cir. 2019). The factual allegations in the complaint against a defendant "must be enough to raise a right to relief above the speculative level." *Christy Sports, LLC v. Deer Valley Resort Co., Ltd.*, 555 F.3d 1188, 1191 (10th Cir. 2009) (citation omitted); *see also Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) ("[T]he mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for these claims."). The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action" because "courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (citation omitted).

### B.   Qualified Immunity

The doctrine of qualified immunity protects government officials from suit unless: "(1) the defendant's actions violated a constitutional or statutory right, and (2) that right was clearly established at the time of the defendant's complained-of conduct." *Truman v. Orem City*, 1 F.4th 1227, 1235 (10th Cir. 2021) (citing *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014)); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Kaufman v. Higgs*, 697 F.3d 1297, 1300 (10th Cir. 2012); *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009). The court may address these two inquiries in any order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *McCowan v. Morales*, 945 F.3d 1276, 1282 (10th Cir. 2019). If the plaintiff fails to satisfy either test, the court must grant qualified immunity. *McCowan*, 945 F.3d at 1282 (quoting *Est. of Ceballos v. Husk*, 919 F.3d 1204, 1212–13 (10th Cir. 2019)).

A right is clearly established only when, at the time of the challenged conduct, "the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 572 U.S. 765, 778–79 (2014). "A plaintiff can demonstrate that a constitutional right is clearly established by reference to cases from the Supreme Court, the Tenth Circuit, or the weight of authority from other circuits." *Gann v. Cline*, 519 F.3d 1090, 1092 (10th Cir. 2008) (citation and quotation marks omitted); *see also Dist. of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) ("The rule must be settled law, which means it is dictated by controlling authority or a robust consensus of cases of persuasive authority.") (internal citations and quotation marks omitted)); *Currier v. Doran*, 242 F.3d 905, 923 (10th Cir. 2001). Clearly established law cannot be defined "at a high level of generality"; rather, it must be particularized to the facts of the case. *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011); *see Anderson v. Creighton*, 483 U.S. 635, 640 (1987). But a plaintiff need not find a prevailing "case with exact corresponding factual circumstances," *Currier*, 242 F.3d at 923, and "officials can still be on notice that their conduct violates established law even in novel factual circumstances," *Quinn v. Young*, 780 F.3d 998, 1005 (10th Cir. 2015) (quoting *Cortez v. McCauley*, 478 F.3d 1108, 1115 (10th Cir. 2007)); *see also Hope v. Pelzer*, 536 U.S. 730, 741 (2002). The dispositive question is whether the unlawfulness of the official's actions was apparent in light of pre-existing law. *Anderson*, 483 U.S. at 640.

When a defendant asserts qualified immunity at the pleadings stage, "the court analyzes the defendant's conduct as *alleged in the complaint*"—subjecting the defendant to a more rigorous standard of review. *Truman*, 1 F.4th at 1235 (quotation omitted); *see also Riggins*, 572 F.3d at 1107. In determining allegations against multiple defendants, the complaint must clearly state "who is alleged to have done what to whom, to provide each individual with fair notice as

to the basis of the claims against [them]." *Truman*, 1 F.4th at 1235; *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008) ("[C]omplaints in § 1983 cases against individual government actors pose a greater likelihood of failures in notice and plausibility because they typically include complex claims against multiple defendants.").

## III.    DISCUSSION

Plaintiffs allege that (1) all Defendants violated their Eighth Amendment right to be free from cruel and unusual punishment, ECF No. 67 ¶ 264, and (2) that Defendant Joe Lytle violated their Fourteenth Amendment right to procedural due process, *id.* ¶ 313. Defendants request judgment on the pleadings based on qualified immunity. ECF No. 111 at 1, 4. The Court addresses each count in turn.

### A.    Count I: Eighth Amendment

Construed in the light most favorable to Plaintiffs, Count I alleges a violation of the Eighth Amendment under two theories: (1) excessive use of force, *see* ECF No. 67 ¶¶ 263-270, 277-79, and (2) psychological harm, *see id.* ¶¶ 270, 266-68, 271-76, 284-85.[4] Defendants argue that they are entitled to qualified immunity on both theories. ECF No. 111 at 1.

To overcome an assertion of qualified immunity at the pleadings stage, Plaintiffs must have plausibly alleged that Defendants violated their clearly established Eighth Amendment rights. *See Truman*, 1 F.4th at 1235; *see also Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001). Because the allegations are fact intensive and many of the allegations are against unnamed Defendants, the Court first addresses whether clearly established law recognizes each

---

[4]    Plaintiffs also seem to allege Defendants caused serious bodily harm by shaving Plaintiffs' heads using unsanitary practices, *see* ECF No. 67 ¶¶ 86-90, 263-311, which would be analyzed under a deliberate indifference standard, *see Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009), but Plaintiffs do not allege any actual harm resulted nor do they make any arguments why this claim should survive an assertion of qualified immunity, *see generally* ECF No. 112.

right before determining if the Third Amended Complaint plausibly alleges that Defendants violated the right. *See McCowan*, 945 F.3d at 1282.

### 1.  Whether law clearly establishes each right allegedly violated.

#### a.  Excessive force

Plaintiffs allege that Defendants used excessive force in the form of forced kneeling, slamming, pushing and shoving, strip searches, and forcefully shaving their heads over trash cans. *See* ECF No. 67 ¶¶ 263-311.

Defendants cite unpublished Tenth Circuit cases, orders from district courts within the Tenth Circuit, and authority from other circuits finding the excessive force standard was not met even when bruising, abrasions, and braking skin result from force. ECF No. 111 at 12-16, 17. Citing to the Supreme Court, Tenth Circuit, district courts within the Tenth Circuit, and other federal courts, Defendants argue that strip searches—even when corrections officers use inappropriate language and commands—are constitutionally permissible. *Id.* at 17-18. Defendants also argue that no clearly established law prohibits shaving the heads of prisoners. *Id.* at 19-21.

Plaintiffs counter that Defendants solely cite to cases involving isolated infractions, which are distinguishable from their allegations. ECF No. 112 at 15-16. Instead, Plaintiffs argue that "the coordinated abuse of a prisoner by defendants may constitute cruel and unusual punishment even though the officers did not inflict serious physical injury." *Id.* at 14 (arguing that this is the holding in *Hudson v. McMillian*, 503 U.S. 1 (1992), without providing a citation). Plaintiffs rely on *Hudson* for the general proposition that conduct may constitute excessive force even when there is not serious physical injury because of its repugnant nature. *Id.* at 14 (citing *Hudson*, 503 U.S. at 4, 12).

The general framework for excessive force claims is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7 (citing *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)); *see also Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010); *DeSpain v. Uphoff*, 264 F.3d 965, 980 (10th Cir. 2001) (finding that even though courts had not decided the specific characteristics of the alleged conduct, the conduct clearly met the definition of excessive force because of its malicious and sadistic nature). But not "every malevolent touch by a prison guard gives rise to a federal cause of action[,]" and no matter the intent behind the conduct, "*de minimis* uses of physical force" do not violate the Eighth Amendment "provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9-10 (quotations omitted).

A right is clearly established when the law is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). Describing a right in general terms or as a broad proposition is not sufficiently clear without some indication as to "the violative nature of *particular* conduct[.]" *Id.* at 12 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)); *see also Redmond v. Crowther*, 882 F.3d 928, 939 (10th Cir. 2018) (requiring "a case where an officer act[s] under similar circumstances"). In the Tenth Circuit, "[a] prison guard's use of force against an inmate is cruel and unusual only if it involves the unnecessary and wanton infliction of pain." *Sampley v. Ruettgers*, 704 F.2d 491, 495 (10th Cir. 1983) (citing *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (quotation marks omitted); *see also Hudson*, 503 U.S. at 10-11 (stating that punishments "involving the unnecessary and wanton infliction of pain" are "repugnant to the Eighth Amendment") (citing *Estelle*, 429 U.S. at 102-03). The Tenth Circuit helpfully defines "wanton" as intentionally harming the inmate; "unnecessary" as force

that is "more than appeared reasonably necessary at the time of the use of force to maintain or restore discipline"; and "pain" as "more than a momentary discomfort . . . [that] result[s] in either severe pain or lasting injury."[5] *Sampley*, 704 F.2d at 495. Plaintiffs bear the burden to show that the rights they are asserting are clearly established. *See Medina*, 252 F.3d at 1128.

Here, Plaintiffs cite *Hudson* for the general proposition that use of force "repugnant to the conscience of mankind" violates the Eighth Amendment, 503 U.S. at 9-10, but they provide no precedential or persuasive authority to support the application of that rule to the facts alleged or that Defendants' conduct qualifies as constitutionally excessive force, *see* ECF No. 112 at 9.

With two exceptions discussed *infra*, the Court finds that, when viewed in the light most favorable to Plaintiffs, the strip searches, "slamming," pushing and shoving, and threatening or sexually humiliating language are not sufficiently well-pleaded to show excessive force that would violate clearly established rights. *See Rhoten v. Werholtz*, 243 F. App'x 364, 366-67 (10th Cir. 2007) (finding no excessive force where a correctional officer during a strip search "*slammed* [plaintiff] against the wall[,] squeezed [his] nipples real hard[,] squeezed [his] buttocks, and pulled on [his] testicles real hard causing [him] a great deal of discomfort and pain") (citation omitted) (emphasis added); *see also Marshall v. Milyard*, 415 F. App'x 850, 851-54 (10th Cir. 2011) (finding no excessive force where corrections officers grabbed an inmate hard enough to cause significant bruising); *Adkins v. Rodriguez*, 59 F.3d 1034, 1037 (10th Cir. 1995) (refusing to "infuse defendant's words of sexual harassment with the sort of violence or threats of violence cognizable [under the Eighth Amendment]"); *Barney v. Pulsipher*, 143 F.3d 1299, 1310, n.11 (10th Cir. 1998) (finding that sexual harassment does not rise to the level of

---

[5]    In *Sampley*, the inmate was strangled, had his head slammed into a metal frame, kneed in the groin, and beaten with barber clippers that left "inch deep stab wound[,]" incidentally while he was receiving a haircut, and the court of appeals found his claim satisfied its test. *Id.* at 493, 496.

excessive force); *Reed v. Smith*, No. 97-6341, 1999 WL 345492, at *4 (10th Cir. June 1, 1999) (finding no excessive force where corrections officers rammed inmate into a wall while walking him); *McCoy v. Heimgartner*, Case No. 17-3139-JWB, 2019 WL 121117, at *11 (D. Kan. Jan. 7, 2019) (finding that sexually charged language and repeated requests to squat during a strip search are not clearly established violations of Eighth Amendment protections). Furthermore, in the Tenth Circuit, receiving a head shave that results in cuts is not clearly excessive force. *See Dunn v. McCotter*, 25 F.3d 1056, 1994 WL 247019, at *1-2 (10th Cir. 1994) (unpublished table decision) (reviewing for abuse of discretion and upholding district court's decision to dismiss inmate's compulsory head shave as frivolous claim of excessive force); *see also Richardson v. Daniels*, 557 F. App'x 725, 727-28 (10th Cir. 2014) (affirming finding of no excessive force where dragging a prisoner along a floor caused skin breaking and abrasions); *Stanton v. Furlong*, 73 F. App'x 332, 334 (10th Cir. 2003) (finding no excessive force where tight handcuffs caused abrasions and edema).

While the actions as alleged may not be how most people think one human should treat another, Plaintiffs have cited no authority holding that the conduct described violates a clearly established constitutional right.[6] Therefore, the Court finds that Plaintiffs have failed to satisfy their burden of establishing that Defendants violated Plaintiffs' clearly established constitutional rights except for the specific allegations noted below.

### i.   Dan Hoffert

The Court finds that Plaintiff Hoffert alleges force at WNMCF—using his head "as a battering ram to open the door" and placing his head in a duffle bag full of metal harnesses, ECF

---

[6]        While the Complaint alleges that Defendants engaged in offensive <u>verbal</u> conduct that escalated the intensity of the alleged events, Plaintiffs have not met their burden of establishing that Defendants' conduct crossed the Constitutional threshold of excessive <u>physical</u> force. *See, e.g.*, *Barney v. Pulsipher*, 143 F.3d 1299, 1310, n.11 (10th Cir. 1998).

No. 67 ¶¶ 94, 98—that "is so egregious even a general precedent applies with obvious clarity," *Ullery v. Bradley*, 949 F.3d 1282, 1291 (10th Cir. 2020), that it plausibly puts Defendants on notice of the violational nature of their actions, *see id.*; *see also Hudson*, 503 U.S. at 4-6, 12; *Sampley*, 704 F.2d at 495. Similarly, during his intake at CNMCF, unnamed Defendants pushed Plaintiff's "face into a cage cell causing a nosebleed" with no provocation. ECF No. 67 ¶ 104; *see Hudson*, 503 U.S. at 4-6, 12; *Sampley*, 704 F.2d at 495. Therefore, Plaintiff Hoffert plausibly alleges violations of a clearly established constitutional right and his claim on Count I survives the first part of the qualified immunity analysis. *See Truman*, 1 F.4th at 1235.

### ii.  Simon Griego

Plaintiff Griego alleges that when he failed to give prison staff his NMCD number his head was "slammed into [a] fence, injuring his eye." ECF No. 67 ¶ 211. While the pleadings do not specify details of Plaintiff Griego's eye injury, the allegations must be accepted as true and viewed in the light most favorable to Plaintiff. *Doe*, 912 F.3d at 1285. The Court finds that Plaintiff Griego alleges force sufficient to put Defendants on notice of the violational nature of their actions, *see Hudson*, 503 U.S. at 4-6, 12; *Sampley*, 704 F.2d at 495. Therefore, Plaintiff Griego plausibly alleges a violation of a clearly established constitutional right and his claim on Count I survives the first part of the qualified immunity analysis. *See Truman*, 1 F.4th at 1235.

In conclusion, with the two exceptions discussed above, Plaintiffs do not meet their burden to plead that Defendants' conduct violated their clearly established constitutional rights. *See DeSpain*, 264 F.3d at 979. Therefore, Defendants' are entitled to qualified immunity for Plaintiffs' excessive force claims except for those made by Plaintiffs Hoffert and Griego.

**b. Psychological harm**

Plaintiffs allege that Defendants caused psychological harm in the form of "sexual humiliation and emotional distress[,]" ECF No. 67 ¶ 311, by using "sexually humiliating and threatening language while strip searching prisoners[,]" *id.* ¶ 302, with the intent to terrorize and humiliate Plaintiffs, *see id.* ¶¶ 54-55, 73-74, 87-88, 112-13, 126-27, 139-40, 153-54, 164-65, 177-78, 191, 205-06, 220-21, 239-42, 254-55, 261-62. They cite to *Benefield v. McDowall*, 241 F.3d 1267, 1272 (10th Cir. 2001) for the proposition that "the Eighth Amendment may be implicated not only to physical injury, but also by the infliction of psychological harm." ECF No. 112 at 9.

Defendants reply by distinguishing *Benefield* from the current case, ECF No. 113 at 5-6—in *Benefield*, the cause of action was a conditions-of-confinement claim where prison guards allegedly placed plaintiff in constant fear of serious bodily harm or death by placing him in general population and spreading a rumor that he was a "snitch," whereas the allegations in the present case do not involve ongoing threats or conditions of confinement and the threats do not include a fear of serious injury or death, 241 F.3d at 1270. Defendants argue that Plaintiffs "fail to identify any clearly established law within this Circuit or elsewhere recognizing an 8th Amendment claim based on a pure psychological injury for undergoing a strip search, name calling, experiencing a 'forced' haircut or other brief instances of minor uses of force." ECF No. 113 at 6.[7]

---

[7]    Defendants also argue that 42 U.S.C. 1997e(e) bars recovery for "mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18)." *See* ECF No. 113 at 6. Section 1997e(e) is a limit on relief, but it does not restrict access to the courts to seek that relief. *Fletcher v. Raemisch*, 768 F. App'x 825, 827 (10th Cir. 2019) (citing *Zehner v. Trigg*, 133 F.3d 459, 463 (7th Cir. 1997)). Because the Court finds that Plaintiffs failed to establish a violation of a clearly established right against psychological harm, the Court need not address this argument.

Verbal threats, harassment, and *de minimis* application of force, without more, do not give rise to an Eighth Amendment claim for psychological harm. *Northington v. Jackson*, 973 F.2d 1518, 1524 (10th Cir. 1992); *see also Folsom v. Knutson*, 702 F. App'x 781, 783 (10th Cir. 2017); *Purkey v. Green*, 28 F. App'x 736, 745 (10th Cir. 2001); *Bridgeforth v. Ramsey*, 198 F.3d 257, 1999 WL 992978, at *2 (10th Cir. 1999) (unpublished table decision). However, the Tenth Circuit recognizes that prisoners have the "right to be free from the terror of instant and unexpected death" where a combination of verbal threats and conduct would place a prisoner in immediate fear of death. *Id.* (quoting *Burton v. Livingston*, 791 F.2d 97, 100 (8th Cir. 1986) (finding harm where a prison guard drew a weapon and made threats to a prisoner using racially charged language)) (citing *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979) (holding that a threat to hang prisoner with nothing more was insufficient)).

Here, Plaintiffs make conclusory statements that "[each] Plaintiff was terrorized with menacing threats of physical violence[,]" that they were "intentionally intimidated and terrorized[,]" and "endured pain, suffering and sexual humiliation[,]" ECF No. 67 ¶¶ 26, 54-55, 73-74, 87-88, 112-13, 126-27, 139-40, 153-54, 164-65, 177-78, 191, 205-06, 220-21, 239-42, 254-55, 261-62; some Plaintiffs provide examples of acts or verbal threats and harassment, *id.* ¶¶ 43, 47, 61-62, 66, 77-82, 106, 118, 134-35, 137, 144, 158, 170, 176, 183, 197-201, 250; one Plaintiff states that he feared "he was going to be raped[,]" *id.* ¶ 239; and one Plaintiff pleads that he "feared for his life and stayed silent[,]" *id.* ¶ 190. However, even accepting these allegations as true and construing them in the light most favorable to Plaintiffs, the Third Amended Complaint does not describe actions that could reasonably give rise to an immediate fear of imminent death. *See Northington*, 973 F.2d at 1524 (finding that to create fear of imminent death threats must be accompanied by threatening conduct such as brandishing a lethal weapon or

placing a revolver in an inmate's mouth); *see also Goodson v. Bryant*, No. CIV-13-1322-D, 2014 WL 4744774, at *8 (W.D. Okla. Sept. 23, 2014) (finding that allegations of physical contact during a heated altercation did not rise to a sufficient threat to create an immediate fear of death). Because the law does not clearly establish that Plaintiffs are constitutionally protected from the threats and conduct alleged, *id.*, Defendants are entitled to qualified immunity for claims related to psychological harm.

For these reasons, the Court finds that: (1) the law *does not* clearly establish Plaintiffs' rights to be free from excessive force as alleged by Plaintiffs Lovato, Beasley, Henderson, Stokes, Parrish, Ramirez, Robeldo-Valencia, A. Sanchez, F. Sanchez, Gurule, McCue, Sedillo, and Sorto; (2) the law *does* clearly establish Plaintiffs rights to be free from excessive force as alleged by Plaintiffs' Hoffert and Griego; and (3) the law *does not* clearly establish Plaintiffs rights to be free from psychological harm as alleged by all Plaintiffs. The Court next analyzes whether, as pleaded, Defendants violated Plaintiffs Hoffert's and Griego's right to be free from excessive force.

### 2.   Whether Plaintiffs plausibly pled that Defendants violated their rights.

Plaintiffs argue that both failure to intervene and conspiracy extends liability to all Defendants and that supervisory liability extends to Defendants Lytle, Bland, and Diaz.[8] *See* ECF 112 at 7, 13-14; Mot. Hr'g, *Lovato v. Lytle*, 1:22-cv-00255-MIS-LF (Apr. 19, 2024). The

---

[8]      Plaintiffs argue that Defendants are jointly and severally liable for acts that contribute to constitutional violations, including failure to intervene. *See* ECF No. 112 at 13-14 (citing *Northington v. Marin*, 102 F.3d 1564, 1569 (10th Cir. 1996)). Joint and several liability is a burden shifting mechanism for apportioning damages. *See Northington*, 102 F.3d at 1569 (citing Restatement (Second) of Torts §§ 433A & B). At the motion for judgment on the pleadings stage, where injury is alleged but not determined, and failure to intervene can be analyzed independently from joint and several liability, the Court declines to consider whether Defendants are jointly and severally liable.

Court considers each in turn and then analyzes whether Plaintiffs properly pleaded a violation of their constitutional rights.

### a. Failure to intervene

Defendants argue that Plaintiffs fail to plead "who is alleged to have done what to whom." ECF No. 111 at 22. Defendants also attack the alleged violative conduct and the alleged resulting injuries individually, for each Defendant. *See* ECF No. 111 at 10-23. Plaintiffs respond that all Defendants participated collectively—in a "coordinated nature"—in the alleged intake incidents and failed to intervene. *See* ECF No. 112 at 13-14. Defendants counter that Plaintiffs must show "factual allegations about each deputy officer defendant during an encounter involving a plaintiff[,]" ECF No. 113 at 3 (citing *Est. of Booker v. Gomez*, 745 F.3d 405, 422 (10th Cir. 2014)), "as predicate for each of the 8th Amendment claims against each defendant[,]" *id.* at 4; *see also Pahls v. Thomas*, 718 F.3d 1210, 1228 (10th Cir. 2013) ("Plaintiffs must do more than show that their rights 'were violated' or that 'defendants,' as a collective and undifferentiated whole, were responsible for those violations.").

In analyzing an excessive force claim under the Fourth Amendment, the Tenth Circuit holds that where the defendants "engaged in a group effort, [they may be found] liable for any underlying finding of excessive force." *Booker*, 745 F.3d at 422 (finding liability even for the deputy who helped handcuff the suspect in an arrest that led to his death). And where a single defendant's use of force is not deemed excessive, they may still be liable for failure to intervene. *Id.* For these reasons, the *Booker* court held that the district court "did not err by failing to engage in individualized inquiry at the summary judgment stage." *Id.* at 423.

In this case, on a motion for judgment on the pleadings, two remaining plaintiffs claim excessive force against fourteen defendants over acts that spanned two different days. *See* ECF

No. 67 ¶¶ 263-311. Plaintiffs allege that Defendants forced them to look down, making identification of Defendants difficult at any given time during the alleged events. *Id.* ¶¶ 28, 42, 52, 58-59, 195, 238, 247. Taking all allegations as true, viewed in the light most favorable to Plaintiffs, and given that identification of Defendants was intentionally obscured during the alleged conduct, Plaintiffs plausibly allege details sufficient to put Defendants on notice that their conduct is the basis of Plaintiffs' claims. *See Booker*, 745 F.3d at 423. If an excessive force violation occurred, all Defendants who were identified as present and failed to intervene may be liable for the excessive force violations against Plaintiffs Hoffert and Griego. *See id.* at 422. The Court finds that on this theory, the Defendants may be liable if the Plaintiffs plausibly plead that (1) their constitutional rights were violated and (2) Defendants failed to intervene. *Id.* (on a motion for summary judgement, finding that a reasonable jury could find defendants liable because plaintiffs provided "evidence suggesting that [the Defendants] could have prevented or stopped [the violation]"). The Court analyzes in greater detail below whether a constitutional violation and Defendants' involvement were plausibly plead.

### b.  Conspiracy

Plaintiffs raise the issue of conspiracy as a theory for extending liability to all Defendants, Mot. Hr'g, *Lovato v. Lytle*, 1:22-cv-00255-MIS-LF (Apr. 19, 2024) (citing *Dixon v. City of Lawton*, 898 F.2d 1443 (10th Cir. 1990); *Bledsoe v. Carreno*, 53 F.4th 589 (10th Cir. 2022)), but they do not raise it as an independent claim, *see generally* ECF No. 67. As this was a new argument raised by Plaintiffs during the Motion Hearing, Defendants did not have notice or opportunity to prepare a response. Mot. Hr'g, *Lovato v. Lytle*, 1:22-cv-00255-MIS-LF (Apr. 19, 2024). The Court finds that a response is not warranted because the conspiracy claims are not plausibly pleaded.

To "recover under a § 1983 conspiracy theory, a plaintiff must plead and prove not only a conspiracy, but also an actual deprivation of rights; pleading and proof of one without the other will be insufficient." *Dixon*, 898 F.2d at 1449. A § 1983 conspiracy requires pleading "specific facts showing an agreement and concerted action among defendants—an agreement upon a common, unconstitutional goal and concerted action taken to advance that goal[.]" *Bledsoe*, 53 F.4th at 609 (quotation marks omitted) (citing *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998); *Janny v. Gamez*, 8 F.4th 883, 919 (10th Cir. 2021) (quoting *Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1126 (10th Cir. 2000))). The agreement "can be inferred from acts furthering the conspiracy's purpose." *Id.* (citing *United States v. Edmonson*, 962 F.2d 1535, 1548 (10th Cir. 1992)). Individual conspirators are not required to "know all the details of the plan designed to achieve the objective or possess the same motives for desiring the intended conspiratorial result." *Id.* (quoting *Frasier v. Evans*, 992 F.3d 1003, 1024 (10th Cir. 2001) (quoting *Snell v. Tunnell*, 920 F.2d 673, 702 (10th Cir. 1990))).[9]

Here, Plaintiffs allege that the intake incidents at CNMCF occurred across two different days and in a similar way that is uniquely outside of the standard corrections intake process. *See* ECF No. 67 ¶¶ 12-38. However, as analyzed above, none of the allegations surrounding Defendants' *collective* actions give rise to a clear constitutional violation. Plaintiff Hoffert's alleged head injury occurred while still at the WNMCF facility prior to the March 20 intake incident. *See id.* ¶¶ 90-99. The Court cannot logically infer a conspiracy based on Plaintiff Hoffert's claim when the injury from those allegations occurred prior to the intake process. Similarly, Plaintiff Griego's alleged eye injury is not clearly related to the other Plaintiffs'

---

[9] While Plaintiffs rely on *Bledsoe*, a case decided two years after the alleged incidents in 2022, the cases that *Bledsoe* relies on were decided well before the incidents. Therefore, the rule statements from *Bledsoe* are relevant in the instant case.

allegations of strip searches and head shavings; as such, the Court cannot plausibly infer that the alleged injury is part of a greater conspiracy. Therefore, the Court finds that Plaintiffs fail to plausibly plead a conspiracy for Plaintiff Hoffert's and Plaintiff Griego's injuries.

### c. Supervisor Liability

Plaintiffs allege that Defendants Lytle, Bland, and Diaz, in their capacity as "high-ranking members of leadership[,]" have supervisory liability. *See* ECF No. 67 ¶¶ 33, 268, 270, 272, 274, 276, 285, 317; ECF No. 112 at 7 (naming Lytle, Bland, and Diaz as the supervisors who "orchestrated and encouraged the terrorization program").

Defendants argue that civil rights violations cannot stand only on a theory of *respondeat superior*. ECF No. 111 at 23-24 (citing *Iqbal*, 556 U.S. at 676; *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010); *Booker*, 745 F.3d at 435). Defendants urge the Court to apply the *Dodds* supervisor liability test as interpreted in *Schnieder v. City of Grand Junction Police Deptartment*, 717 F.3d 760, 767-70 (10th Cir. 2013). *See* ECF No. 111 at 24-28. Plaintiffs argue that Defendants Lytle and Bland, and at times Defendant Diaz, oversaw and orchestrated "the abuse[.]" *See* ECF No. 112 at 2, 7, 10; *see also* ECF No. 67 ¶¶ 33-34, 37, 45, 86, 124, 151-52, 188, 222, 227-28, 268, 270, 272, 274, 288, 294-95, 297.[10] Defendants reply that Plaintiffs'

---

[10]     Plaintiffs claim that Defendants Lytle and Bland were already "aware that such abusive practices violated Plaintiffs' rights under the Eighth Amendment" because they "were privy to previous litigation that involved astonishingly similar patterns of humiliation and mistreatment of prisoners." ECF No. 112 at 10; *see also* ECF No. 67 ¶¶ 298-300. However, Plaintiffs do not identify the "previous litigation" by case name, number, or citation, and do not indicate how that "previous litigation" was resolved in such a way that would put Defendants Lytle and Bland on notice that their alleged conduct violated the Eighth Amendment. For example, Plaintiffs do not argue or allege that the district court in the "previous litigation" entered judgment in favor of the plaintiffs and that the Tenth Circuit court of appeals affirmed in a published opinion. Indeed, Plaintiffs do not even assert that the "previous litigation" was a federal case.

The Court takes judicial notice of *J.O. v. Dorsey*, No. 1:11-cv-00254-MCA-GBW (D.N.M. filed Mar. 23, 2011), the case Plaintiffs may be referring to but do not identify. *See* Fed. R. Evid. 201; *Shields L. Grp., LLC v. Stueve Siegel Hanson LLP*, 95 F.4th 1251, 1259 n.4 (10th Cir. 2024). That case was settled at some time during the initial discovery phase and before the presiding judge made a determination on the defendants' qualified immunity claim. *See J.O.*, No. 1:11-cv-00254-MCA-GBW, Final Order Approving Settlement Agreement, ECF No. 157 (Nov. 19, 2014). A case can settle for any number of reasons and Plaintiffs do not provide any details or supporting case

argument is "formulaic" and, in particular, that the Complaint does not specify factual allegations involving Defendant Bland. ECF No. 113 at 12-14.

To establish a Section 1983 claim against a supervisor, "supervisor status by itself is insufficient to support liability." *Mitchell*, 80 F.3d at 1441. The Tenth Circuit requires that a plaintiff show "the supervisor's subordinates violated the constitution" and that there is "an 'affirmative link' between the supervisor and the violation, namely the active participation or acquiescence of the supervisor in the constitutional violation by the subordinates." *Serna v. Colo. Dept. Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006). The Tenth Circuit applies an inter-related three prong analysis to determine affirmative link: "(1) personal involvement, (2) sufficient causal connection, and (3) culpable state of mind." *Dodds*, 614 F.3d at 1195. These requirements are not "necessarily distinct" and may be shown through a single fact, such as a supervisor's "knowledge of and acquiescence in a constitutional violation" used to meet all three prongs. *Id.* at 1196; *cf. Schneider*, 717 F.3d at 767-69 (analyzing each prong in turn); *see also Hudson*, 503 U.S. at 4, 12 (upholding a lower court's finding that a supervisor "expressly condoned the use of force" when he observed subordinates beating an inmate and told them "not to have too much fun").

In this case, Defendants correctly note that Plaintiffs do no provide more than a cursory argument for supervisory liability. *See* ECF No. 113 at 14. However, the Court's analysis must rely on the facts as alleged. *Doe*, 912 F.3d at 1285. Plaintiffs allege that Defendant Lytle served as an assistant warden, *id.* ¶ 7, recorded at least part of the treatment of Plaintiffs instead of

---

law. Nor do they allege how Defendants Lytle and Bland "were privy" to the *J.O.* case, as neither Lytle nor Bland are named Defendants in *J.O.* Regardless, the *J.O.* court did not find that <u>any</u> of the alleged conduct violated the Eighth Amendment, so even Defendants Lytle and Bland "were privy" to *J.O.*, that case does not support Plaintiffs' allegation that "defendants Lytle and Bland knew that their conduct violated the constitution." ECF No. 67 ¶ 300.

intervening, *id.* ¶¶ 44-45, 124-25, 227-28, 240, 288, and "encouraged" the treatment, *id.* ¶¶ 222,
240. Regarding Defendant Bland, Plaintiffs allege that he served as captain, *id.* ¶ 8, participated
in the alleged abusive conduct, *id.* ¶¶ 56, 75, and at times watched without intervening, *id.* ¶¶ 86,
188. Defendant Diaz allegedly served as captain at the time of the alleged events, *id.* ¶ 8, but is
not alleged to have been present during or to have participated in the conduct giving rise to
Plaintiffs Hoffert's or Griego's claims, *id.* ¶¶ 89-114, 207-222.

Construed in the light most favorable to Plaintiffs, Defendants Lytle and Bland were
supervisors during the intake incidents, witnessed some of the conduct that is the foundation for
the surviving causes of action, did not stop the conduct, and were therefore aware of the alleged
harm. As alleged, these facts show personal involvement in the conduct, a causal connection to
the intake incidents, and culpable state of mind. *See Dodds*, 614 F.3d at 1195-96. The Complaint
describes a plausible affirmative link between Defendants Lytle and Bland and the alleged
violations of Hoffert and Griego through active participation of acquiescence. *Id.* The Court
finds Defendants Lytle and Bland may be liable under the theory of supervisor liability if the
Third Amended Complaint plausibly alleges that they violated Plaintiffs Hoffert's and Griego's
constitutional rights. The Court analyzes in greater detail below whether Plaintiffs plausibly
plead a constitutional violation.

### d. Violational Conduct

Determining if Defendants violated Hoffert's and Griego's Eighth Amendment right to
be free from excessive force requires a two-part analysis—objective and subjective. ECF No.
111 at 10-11 (citing *Redmond*, 882 F.3d at 936). Excessive force meets the objective prong "if
the alleged wrongdoing was objectively harmful enough to establish a constitutional violation."
*Redmond*, 882 F.3d at 937. For excessive force to meet the subjective prong, "the plaintiff must

show that the officials acted with a sufficiently culpable state of mind." *Id.* For the reasons set out below, the Court finds that the allegations that survive the clearly established rights analysis.[11]

### i. Dan Hoffert

Plaintiff Hoffert names Defendants Bojorquez and Young as the officers that used his head as a battering ram to open a door and then later put his head in a duffle bag full of metal harnesses. ECF No. 67 ¶¶ 93-99. Plaintiff does not name the Defendants who pushed his face into a cage causing his nose to bleed, but he does provide specifics of a conversation between two of the officers. *See id.* ¶¶ 103-04.

Defendants argue that the allegations are a *de minimis* use of physical force because "there is no allegation of bruising, let alone physical injuries requiring medical care." ECF No. 111 at 17 (citing *Reed*, 1999 WL 345492 at *1; *Schabow v. Steggs*, Civil Action No. 16-CV-002232-RBJ-KLM, 2018 WL 1557257, at *5-6 (D. Colo. Mar. 30, 2018) (finding officers' actions objectively reasonable where officers kicked tray port causing bruising, twisted his arm and fingers and slammed prisoner to floor in response to a perceived threat); *Broadus v. Timme*, Civil Action No. 11-CV-00802-CMA-KMT, 2012 WL 639310, at *8-9 (D. Colo. Jan. 30, 2012) (finding allegations that plaintiff was punched and slammed against wall as too vague to rise above *de minimis* force or be morally repugnant); *cf. Jarrett v. Schubert*, No. 97-2628-GTV, 1998 WL 471992, at * (D. Kan. July 31, 1998) (finding that plaintiff cannot state a claim under

---

[11] In any event, to the extent that it is relevant at this stage in the proceedings, the court further finds that Defendants raise a factual dispute regarding whether their conduct violates the Eighth Amendment that should be resolved after discovery or submitted to a jury for resolution. *See Harlow v. Fitzgerald*, 457 U.S. 800, 816 (1982) (recognizing that well-pleaded "subjective good faith has been considered to be a question of fact that some courts have regarded as inherently requiring resolution by a jury"); *DeSpain v. Uphoff*, 364 F.3d 965, 975 (10th Cir. 2001) ("Whether an official had 'the requisite knowledge of a substantial risk' and ignored that risk is a question of fact.") (quoting *Farmer v. Brennan*, 511 U.S. 825, 842 (1970)).

the Fourth Amendment because she was not in custody even though defendant rammed his elbow and gun into her chest, pinning her to the wall causing bruising)). Defendants also argue that Plaintiff Hoffert's allegations span two separate incidents, the first describing the head injuries at WNMCF and the second causing a nosebleed at CNMCF. ECF No. 111 at 16.

Plaintiffs respond that "use of excessive force against an inmate may constitute cruel and unusual punishment under the Eighth Amendment even when the inmate does not suffer serious physical injury." ECF No. 112 at 5 (citing *Hudson*, 503 U.S. at 4). Defendants reply that "Plaintiffs offer no analysis of Hoffert's claim against Defendants Bojorquez and Young, except to repeat the allegation that defendants [sic] Bojorquez and Young hit his head opening a door, while moving him after he had been non compliant with directives to remain in place in the aftermath of the disturbance." ECF No. 113 at 8.

Here, taking all allegations as true, the use of force is objectively unreasonable because, in the light most favorable to Plaintiffs, ramming someone's head through a door unprovoked and ramming their head into a bag of metal objects can plausibly be interpreted as a beating, *Hudson*, 503 U.S. at 4, 9-10, and the Plaintiff alleges "severe pain and an injury to his head," ECF No. 67 ¶ 95. Likewise, pushing someone's head into a metal cage forcefully enough to cause a nosebleed without provocation is objectively unreasonable. *See id.* ¶¶ 103-04; *Hudson*, 503 U.S. at 4, 9-10.

The objective element being met, a Defendant "has a culpable state of mind if he uses force maliciously and sadistically for the very purpose of causing harm rather than in a good faith effort to maintain or restore discipline." *Redmond*, 882 F.3d at 936 (quotations omitted). As pleaded, Plaintiff Hoffert plausibly describes malicious intent because as he was being rammed through the door, he does not indicate that he was resisting, and there is no penological purpose

for ramming his head in the duffle bag full of metal harnesses. *See id.*; *see also Hudson*, 503 U.S. at 8-9. Similarly, prior to having his head pushed into a metal cage, one officer told another: "Watch out for this one; he has a mouth on him[,]" indicating the unnamed Defendants' malicious intent. *See* ECF No. 67 ¶ 103; *Redmond*, 882 F.3d at 936.

Plaintiff ascribes all alleged acts at WNMCF to Defendants Bojorquez and Young such that they are clearly on notice of the allegations of excessive force violations against them. *See* ECF No. 67 ¶¶ 93-99; *see also* ECF No. 111 at 9 (citing *Baker v. McCollan*, 443 U.S. 137, 140 (1979); *Robbins*, 519 F.3d at 1250). Plaintiff does not name the alleged perpetrators that caused the nosebleed during the March 20 intake at CNMCF, but he does clearly describe an interaction between two officers such that they could identify themselves and be on notice that their conduct formed the basis of his Eighth Amendment claim. *See Robbins*, 519 F.3d at 1248. No other Defendants are described or named as participating in or observing Plaintiff Hoffert's allegations at WNMCF and CNMCF, nor are any supervisors plausibly implicated in condoning the actions.[12] ECF No. 67 ¶¶ 93-99; *Serna*, 455 F.3d at 1152. Therefore, Defendant Hoffert plausibly pleads a constitutional violation against Defendants Bojorquez and Young for their conduct as alleged at WNMCF and the unnamed Defendants for their conduct at CNMCF. Because no other officers are described as present or participating in the violational conduct, liability does not extend to any other Defendants, named or unnamed. *See Booker*, 745 F.3d at 423.

### ii.  Simon Griego

Plaintiff Griego alleges that during the April 8 intake "staff kept asking [him] what his NMCD number was[, and] [w]hen staff did not get an acceptable answer Griego was taken by

---

[12]    In the last paragraph describing the allegations specific to him, Plaintiff Hoffert vaguely alleges that "Defendants Lytle and Bland failed to intervene during this abusive behavior and by failing to do so actively encouraged the abuse to escalate." ECF No. 67 ¶ 114. This statement is conclusory, not well-pleaded, and therefore fails to state a claim for supervisor liability against Lytle and Bland. *Iqbal*, 556 U.S. at 678.

the neck and had his head slammed into the fence, injuring his eye." ECF No. 67 ¶¶ 208-11. Although he does not name the Defendants who did this, Plaintiff Griego alleges that Defendants Gonzales, Padilla, Garcia, Holguin, M. Chavez, and R. Chavez were present during the intake. *See id.* ¶ 216.

Defendants argue that the allegations are a *de minimis* use of physical force, which the Eighth Amendment prohibition on cruel and unusual punishment does not prohibit. *See* ECF No. 111 at 11 (citing *Hudson*, 503 U.S. at 1; *Redmond*, 882 F.3d at 938; *Sampley*, 704 F.2d at 496; *Marshall*, 415 F. App'x at 853). Plaintiffs argue that Plaintiff Griego's treatment was unwarranted because he offered no resistance. *See* ECF No. 112 at 7.

Plaintiff Griego alleges injury due to unprovoked force. ECF No. 67 ¶¶ 210-11. Therefore, when construed in the light most favorable to the Plaintiff, the Complaint plausibly alleges objectively unreasonable force under the circumstances. *See Hudson*, 503 U.S. at 4. The subjective element is also met because, as pleaded, Plaintiff Griego was providing no resistance to the intake process. *See* ECF. No. 67 ¶¶ 210-11; *Hudson*, 503 U.S. at 8. Thus, Plaintiff Griego has plausibly pleaded a violation of his right to be free from excessive force under the Eighth Amendment. *See Hudson*, 503 U.S. at 8-9; *see also Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996) (holding that a defendant is properly before the court when "the allegations in the body of the complaint make it plain the party is intended as a defendant" by alleging personal involvement).

Plaintiff ascribes these actions to "staff" or "welcoming committee" and does not provide specific names of the intake staff. *See* ECF No. 67 ¶¶ 208-11. However, he alleges that Defendants Gonzales, Padilla, Garcia, Holguin, M. Chavez, and R. Chavez were present during the intake process on April 8. *See id.* ¶ 216. While it is true that the Complaint must clearly

allege facts attributable to individuals for proper notice, *see Truman*, 1 F.4th at 1235; *Robbins*, 519 F.3d at 1249, and Plaintiff did not identify which Defendants slammed his head into a fence, ECF No. 67 ¶ 210, Plaintiffs have pleaded sufficient detail to put Defendants collectively on notice that they are liable for their individual actions, *see Booker*, 745 F.3d at 423; *Mitchell*, 80 F.3d at 1441; ECF No. 67 ¶ 216. Therefore, culpability may extend to any other Defendants named or unnamed who participated in the April 8 intake in relation to Plaintiff Griego's eye injury.[13] *See Booker*, 745 F.3d at 423.

In conclusion and for these reasons, Defendants Bojorquez and Young are not entitled to qualified immunity related to Plaintiff Hoffert's excessive force claim for injuries that occurred at WNMCF on March 20; all other Defendants are entitled to qualified immunity as to the Eighth Amendment claims from the March 20 intake incident. Defendants who participated in the events related to Plaintiff Griego's April 8 eye injury are not entitled to qualified immunity; all other Defendants are entitled to qualified immunity as to the Eight Amendment claims from the April 8 intake incident.

### B.      Count II: Fourteenth Amendment

Count II alleges that Defendant Lytle violated Plaintiffs' right to procedural due process. ECF No. 67 ¶ 312-23. Defendants move to dismiss Count II as a matter of law and based on qualified immunity. ECF No. 111 at 31-32.

---

[13]      In the last paragraph describing all allegations specific to him, Plaintiff Griego vaguely alleges that "Once again Defendant Lytle was in charge of this 'welcome committee' and encouraged the above described abuse." ECF No. 67 ¶ 222. Even when construed in the light most favorable to Plaintiff, this statement and the preceding allegations provide no details that place Defendant Lytle at the scene of the alleged eye injury, nor do any allegations show that Defendant Lytle was supervising the interaction. *See id.* ¶¶ 208-221. Therefore, Plaintiff does not provide sufficient factual details to state a claim against Defendant Lytle in any supervisory capacity. *Iqbal*, 556 U.S. at 678.

### 1.   Whether Plaintiffs' procedural due process claims should be dismissed as a matter of law.

As a threshold matter, the Court addresses whether Count II should be dismissed as a matter of law.

Defendant Lytle argues that Count II equally describes rights protected under the Eighth Amendment as it does procedural due process rights protected under the Fourteenth Amendment. *See* ECF No. 111 at 31-32. Therefore, "[d]ismissing the 14th Amendment claim also does not change the constitutional protection afforded the Plaintiffs[.]" *Id.* at 32 (arguing that the Fourteenth Amendment claim is redundant); *see Graham v. Connor*, 490 U.S. 386, 395 (1989) (ruling that when an "explicit textual source of constitutional protection" is available it should be the primary guide for analysis instead of "the more generalized notion of 'substantive due process'"); *Berry v. City of Muskogee*, 900 F.2d 1489, 1494 (10th Cir. 1990) (applying Eighth Amendment standards in excessive force claims involving convicted prisoners because it is the "primary source of substantive protection to convicted prisoners") (quoting *Whitley*, 475 U.S. at 327).

Plaintiffs argue that the jurisprudence relied on by Defendant Lytle should not apply to this case because it solely applies to substantive due process, which is not at issue here, *see* ECF No. 112 at 18. Plaintiffs seem to say that all Eighth Amendment claims of excessive force implicate a violation of procedural due process under the Fourteenth Amendment. *See* ECF No. 112 at 12.

Where an explicit textual source provides a right or protects interests, the Tenth Circuit declines to use the "more general due process considerations of the Fourteenth Amendment [as] a fallback[.]" *Shimomura v. Carlson*, 811 F.3d 349, 361 (10th Cir. 2015) (quoting *Becker v.*

*Kroll*, 494 F.3d 904, 919 (10th Cir. 2007) (citing *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham*, 490 U.S. at 395))). This restraint applies equally to procedural due process as it does to substantive due process. *Id.* The Eighth Amendment is the "primary source of substantive protection to convicted prisoners[.]" *Berry*, 900 F.2d at 1494 (quoting *Whitley*, 475 U.S. at 327).

Plaintiffs' described their Fourteenth Amendment claim in terms of "the right of prisoners to be free of excessive use of force" and "humiliating, injurious, and abusive treatment[,]" ECF No. 112 at 11-12 (citing *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005); *Sandin v. Conner*, 515 U.S. 472, 484-85 (1995)), rights articulated by and protected through the Eighth Amendment, *see Sandin*, 515 U.S. at 487 n.11. Nothing in the Complaint or Response indicates that Plaintiffs received an injury they cannot recover for under their Eighth Amendment claim. *See generally* ECF No. 67; ECF No. 112. Because the Eighth Amendment explicitly protects Plaintiffs' rights as asserted, the Court finds their Fourteenth Amendment claim under Count II duplicative of Count I. *See Shimomura*, 811 F.3d at 361-2. Therefore, the Court grants Judgment on the Pleadings as to Count II, allegations of Fourteenth Amendment violations by Defendant Lytle.

### 2. Whether Defendant Lytle is entitled to qualified immunity from Plaintiffs' procedural due process claims.

Even if Plaintiffs overcome the challenge to Count II as a matter of law, they still need to overcome the qualified immunity defense. *See* ECF No. 113 at 14; *see generally* ECF No. 111. To overcome an assertion of qualified immunity at the pleadings stage, Plaintiffs must plausibly allege that Defendant Lytle violated their clearly established Fourteenth Amendment rights. *See Truman*, 1 F.4th at 1235.

In Count II, Plaintiffs allege that Defendant Lytle violated their Fourteenth Amendment right to procedural due process. ECF No. 67 ¶¶ 312-23. In determining whether Plaintiffs' procedural due process rights were violated, the Court asks two questions: "(1) Did the individual possess a protected property [or liberty] interest to which due process protection was applicable?" and "(2) Was the individual afforded an appropriate level of process?" *Camuglia v. City of Albuquerque*, 448 F.3d 1214, 1219 (10th Cir. 2006) (quoting *Clark v. City of Draper*, 168 F.3d 1185, 1189 (10th Cir. 1999)). Here, Plaintiffs allege, and Defendants do not deny, that a complete absence of process preceded the described events, s*ee* ECF No. 67 ¶¶ 312-23; ECF No. 111 at 31-32; ECF No. 113 at 14-16, so the Court assumes that is true and focuses its analysis on whether Plaintiffs have a protected liberty interest, *see Elwell v. Byers*, 699 F.3d 1208, 1217 (10th Cir. 2012) (applying the *Camuglia* test to liberty interests); *see also Heutzenroeder v. Mesa Cnty. Valley Sch. Dist. 51*, 391 F. App'x 688, 691 (10th Cir. 2010).

Plaintiffs argue "that Defendant Lytle punished them before providing them with any procedural safeguards to confirm they had violated NMCD policies in such a manner as to justify punishment[.]" ECF No. 112 at 10; *see also* ECF No. 67 ¶¶ 312-23. Plaintiffs assert that the Eighth Amendment gives prisoners a liberty interest in being free from excessive force, *see* ECF No. 112 at 11-12 (citing *Wilkinson*, 545 U.S. at 221, 224), defined as "[p]unitive measures that 'present a dramatic departure from the basic conditions' of prison life . . . [,]" *see* ECF No. 112 at 12 (quoting *Sandin*, 515 U.S. at 485), which the collective alleged actions meet, *see id.* Defendant Lytle counters that Plaintiffs reliance on *Sandin* is misguided because the *Sandin* court declined to find a liberty interest even where plaintiff spent 30-days in solitary confinement because it did not cause a "major disruption to his environment" or "affect the duration of his sentence." *Sandin*, 515 U.S. 486-87; *see also* ECF No. 113 at 15.  Defendant also notes that

Plaintiffs fail to provide any cases illustrating liberty interests similar to their claims. *See* ECF No. 113 at 15.

While prisoners "do not shed all constitutional rights at the prison gate," courts decline to interfere in prison management and prisoner rehabilitation decisions, even when punitive, unless the allegations "present a dramatic departure from the basic conditions of [the sentence]." *Sandin*, 515 U.S. at 485. The Tenth Circuit has found a liberty interest for incarcerated individuals when allegations describe an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life[,]" *DiMarco v. Wyo. Dep't of Corr., Div. of Prisons*, 473 F.3d 1334, 1340 (10th Cir. 2007) (quoting *Sandin*, 515 U.S. at 484), weighing factors to determine (1) the appropriate baseline and (2) necessary magnitude of deviation from that baseline to form a liberty interest, *id.*

Here, the conditions of the transfer, not the fact of being transferred, are at the core of Plaintiffs' Fourteenth Amendment procedural due process claim. ECF No. 67 ¶¶ 314-15; *see also* ECF No. 112 at 12. Plaintiffs assert that the alleged excessive force is "clearly punishment that is atypical in any prison[,]" ECF No 67 ¶ 315, but provide no case law establishing an appropriate baseline or demonstrating the magnitude of alleged atypical conduct, *see* ECF No. 112 at 10-13. The case law they point to suggests otherwise—that whatever the standard prison conditions may be, deviation from that standard creates a liberty interest when *liberty* is clearly at issue, such as indefinite solitary confinement or impact on release date. *See DiMarco*, 473 F.3d at 1342-45 (upholding confinement conditions by weighing factors: penological interests; extreme conditions of solitary confinement present; placement increases underlying confinement period; and indeterminant period); *see also* ECF No. 112 at 11-12 (citing *Sandin*, 515 U.S. at 484-85) (where 30-days in solitary confinement was not atypical); *cf. Wilkinson*, 545 U.S. at 224 (finding

that a combination of factors created a liberty interest where solitary confinement lasted an indefinite period and negatively impacted parole).

Solitary confinement is not analogous to the liberty interests that Plaintiffs allege, and Plaintiffs have not properly plead a violation of their liberty interests. *See* ECF No. 67 ¶¶ 12-38. Therefore, assuming *arguendo* that Count II is not duplicative of Count I, Defendant Lytle is entitled to qualified immunity because Plaintiffs have not shown that he violated a clearly established right. *See Camuglia*, 448 F.3d at 1218-19.

**IV.    CONCLUSION**

For the foregoing reasons, it is **HEREBY ORDERED** that:

1.  Defendants' Third Motion for Judgment on the Pleadings, ECF No. 111, is **GRANTED IN PART AND DENIED IN PART** consistent with this order:

    a.    Defendants are entitled to Judgment on the Pleadings as to Count II of Plaintiffs' Third Amended Complaint; and

    b.    Defendants are entitled to Judgement on the Pleadings as to Count I of the Third Amended Complaint except for certain claims made by Plaintiffs Hoffert and Griego as described in this Order; and

2.  Plaintiffs shall have fourteen days from the date of this order to **SHOW CAUSE** why Defendants John Doe 1 and 2 should not be dismissed from this case or why this order should not apply to Defendants John Doe 1 and 2.


_____
**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE